Harold DeBerry May it please the court. My name is Dean Greer. I represent Sheri Whitlock, the appellant. There are two judgments before this court. The $232,000, which is the alleged benefit that she received for the alleged transfer, and then there's an attorney's fee judgment based upon the granted separately. For the purpose of today, I won't deal with the first one because if you overturn the first one, I believe the second one just goes away. Our conversation involves one issue. If a transferee of a fraudulent transfer returns the money to the debtor, should they still be punished? The answer is no for three reasons. One, it violates the underlying principles of recovery statutes. Two, Section 550 does not come into play because a fraudulent transfer had already been remedied, and three, it's just bad public policy. Assume the facts of this case except that Curtis DeBerry did not file bankruptcy and a creditor had sued Sheri Whitlock under the very same statutes brought by the trustee in state court. Would she have been filed liable? The answer is no. In the case of Schaefer versus Frost National Bank, the 14th Circuit, 14th Court of Appeals in Houston said, if as represented by Marta, the stock that was allegedly fraudulently transferred by Frost Bank in 2000 was reconveyed back in 2003, then as a matter of law, there is no remedy available for the alleged fraudulent transfer. The California case of Keller versus Keller and the case of Robeson versus Coghlan out of Connecticut affirm that ruling. The fact that bankruptcy was filed did not change the fact that she should be held liable. The trustee's actions is a code-based collection action for all creditors. It is a mechanism to recover property that has not been returned pre-petition. Recognizing this, the overwhelming case law is that if the transfer is returned to the debtor pre-petition, there's nothing for the trustee to avoid. Courts use different names, but the results are the same. Some courts hold that there was never a transfer to begin with. These are the cases of Manning versus Wallace, Patz versus Lassman, Basque versus Soran, and Finkel versus Palchuk. Each of these hold that if the fraudulent transfer had been returned pre-petition, there's nothing for the bankruptcy trustee to recover. In Patz versus Lassman, the court denied the trustee's action because the transfer had already been undone and the benefit of the estate had already been completed. The Manning court was even more blunt, and I quote, if the property has already been returned, can one conceptualize a correct decision by the bankruptcy court that would allow recovery against a transferee? So that makes some sense to me. If I'm understanding what you're saying, in all those cases stand for the general proposition that there is nothing to avoid because the money was returned pre-petition. What I'm struggling with is a sentence in your brief that is on page eleven that says, for purposes of this brief, appellant concedes the transfer was avoidable. So if you concede that the transfer is avoidable, then why aren't we talking about what happens once 550 does come into play? Because I take all of those cases and I understand your proposition. It makes some sense that we shouldn't be talking about 550 if there's nothing to avoid, but it seems like you want to talk about 550. Well, there's two provisions. There's two, even in the Hurtado case, which is their main case in point, there's a difference between avoidance and recovery. So if you were driving your F-350 back in Texas and I'm driving my little electric car and I bump into you and my car is demolished, but your car is absolutely fine, I'm liable because I bumped into you, but there's no remedy because your F-350 doesn't look like anything happened. So that's why there's a difference. Why, in the other cases I'll cite, you look at the avoidance action and say, okay, I can avoid this because it's a fraudulent transfer. However, is there a recovery available to the In other cases, talk about the single satisfaction rule under 550 and the double recovery. These are the cases of Grossman versus Bonafant, in NCARE case, in the Florida cases of Kingsley and Erickson. The NCARE case is very important. The owner, a doctor of NCARE, had a judgment, knew there was a judgment against NCARE and they already once got the money out of NCARE's bank account. So he caused 1.779 million dollars of NCARE's money to be transferred to Advance Care, another company owned by him. He admitted that the only reason he transferred that money was so that the creditors of NCARE couldn't get to it. And the court found that was a hindered delay in the fraud creditors. Moreover, the court said because the doctor was the owner of both companies, this was actual fraud. But the court said, that's not enough. The analysis can't stop here because it was undisputed that Advance Care had paid back the 1.779 million to NCARE before NCARE filed bankruptcy. In denying the avoidance transfer, the court said, if the debtor had received the property back, the debtor's estate has not been diminished, the creditors have not been prejudiced, and there's no reason for the trustee to invoke the avoidance power. Quoting further, it is difficult to discern how a credit body as a whole was harmed by NCARE's transfer to Advance in 2010, given that all was effectively reversed within a year. The third point is that it's just the lower courts are generating bad public policy. Since the beginning of time, we want the law to want fraudulent transfers returned to the debtor as quickly as possible. There's a moral obligation to do so. Texas law supports that since the early 1900s. They want that money returned, and there's consideration if you do do that. But here, Judge Gargantas and Judge Lambert's decision say, if you transfer that money back, and if you believe there's a bankruptcy going to happen in the future, you better not return that money back because you may be sued twice. So it prohibits people from wanting to give the money back to the debtor if they believe that sometime a bankruptcy case might be filed. To Judge Garganta, it didn't matter that she returned the money to Curtis or what Curtis did with it. Curtis did not, I mean, Sheree did not return the money to the Chapter 7 trustee, and that was the end of the story. Well, there was no trustee when she returned the money, right? No. No, there couldn't have been, because as the outplay is pulling full out, there wasn't a bankruptcy state to begin with when she gave the money back. Judge Lambert agonized over this return of the money. Initially, he affirmed with really not discussion. On reconsideration, it took him just shy of a year to affirm. He said, my logic was wrong, but my answer is still the same. And the logic, he said, by which he spoke, was because there are circumstances, he said, where if the fraudulent transferee returns the money, it would be okay if, A, the debtor held on to the money when he filed bankruptcy, and, B, he had bought property with it, and that property was still available. He didn't sign a case for that reasoning, and it's not supported by case law. In Bonifant, Manning, and Incare, all the money that was returned to the debtor was gone when the bankruptcy was filed, and it's difficult to imagine if Sheree had waited until the bankruptcy had been filed and transferred the money to the trustee, would there ever have been a transfer? Would there have been a fraudulent transfer? Is there ever a situation where the transferee returns the money to the transferer and the transferer files bankruptcy and he still has it? Nobody would bring a cause of action. There's nothing to bring. So Judge Lambert's pointing out if he holds on to the property, he's not really direct and point. Moreover, what control did Ms. Whitlock have after she gave the money back? What was she going to do? She couldn't. She didn't believe she had control when it was in the bank account. She certainly didn't believe when she gave it back to him when she could say, don't file bankruptcy, or if you take this property, put it in, put it, buy something, and hold on to it because we don't want to, I don't want to be sued. Lambert. Mr. Greer, let me just ask you a factual question. The two transfers we're talking about, one was for something like $200,000 and the other one was for $30-something thousand? Correct. That's right. And one of them, one of them was supposed to have gone to a company that essentially is an alter ego. $200,000 went to a, went to the husband's company. Right. And then the other, the $30,000 went to his wife. $35,000 went to the wife. That's correct. Is there any fact issue as to that or did the court leave that unresolved as to whether that actually happened? The court was looking at did the money, was the money returned to the bankruptcy estate? If it wasn't, that was the end of the story. Okay. And Judge Lambert, in his opinion, presumed that all the money had gone back to the debtor. But again, because there was nothing in the record that showed that money was still there when he filed, she was liable. Okay. Thank you. Lambert did agree that the money returned could prevent liability, something which Judge Gargatta did not agree with. However, after making that change in logic, Judge Lambert looked at all the cases we cited to the court below and to the court we cited here, and he said, I admit that my ruling is at odds with all those other cases. But without explanation, he decided they were unpersuaded. Finally, Judge Lambert made an interesting conclusion when he was talking about windfall under 550. And that's the last page of his opinion. Believing that Curtis and Kathy DeBerry had already spent all the money before bankruptcy was filed, he said, and I'll quote this, the estate is down $232,000. Just as it would have, Ms. Whitlock kept the funds to herself, had transferred the property to someone else, or had Mr. DeBerry spent the money without transferring to Ms. Whitlock in the first place. Well, if the last was true, Ms. Whitlock wouldn't be here. If she had kept the funds to herself, she wouldn't be here because she would turn it over to the trustee. And whether she transferred to somebody else is not really relevant. And I believe that Judge Lambert was trying to, in trying to affirm, tried to stick a either round peg into a square hole or the reverse. The facts, the law, and the public policy all show that the money was returned to the majority of the case law. What money should return and do not hold the transfer liable for having done so. And public policy wants people to return money fraud to return and not be punished. Thank you. Thank you. Mr. Capuccio. May it please the court. My name is Elliot Capuccio. I'm here on behalf of the appellee, John Patrick Lowe, in his capacity as Chapter 7 trustee for the bankruptcy estate of Curtis Harold DeBerry. There are two issues in this appeal, Your Honors. The first is whether Ms. Whitlock constitutes an initial transferee under Section 550 of the Code. The second is whether Section 550D could somehow operate to bar the trustee's recovery. As Judge Oldham pointed out, they've conceded in their brief that, I believe it was at page 11, that there was a fraudulent transfer. And in addition, they didn't raise that issue in the district court so it was waived even before they got here. So that's not an issue. We're looking at 550 and 550D. There's another theme that the appellant continues to weave through their pleadings, their briefs, and here in argument today. And that's the question, what is Ms. Whitlock to do with this money? That question, one, tries to paint Ms. Whitlock as the victim when, in fact, we shouldn't lose sight of the fact that the victims are the dozens of creditors, innocent creditors, in the bankruptcy proceeding who were left empty-handed as a result of the debtor's fraud and the assistance of Ms. Whitlock in the scheme. Number two, it presupposes that Ms. Whitlock had no choice but to accept a cashier's check for $275,000 without any consideration or reasonable basis whatsoever. My answer to Mr. Greer's question is, what should she do? She should say no. When presented with the cashier's check for $275,000, say no. But is your position that once she says yes, that she's just, she's on the hook no matter what? I think under Section 550, it is essentially strict liability as the initial transferee. So what if she had said, what if she gets the check on a Thursday? She realizes what happened, right? Because she's like, oh gosh, he's in financial distress. I'm super savvy. I understand everything about 550 and how this works in bankruptcy. And so on Friday, the next day, she returns it to Curtis. Well, I think there'd be a question then as to whether she had dominion or control over it. In our case, there's no question she negotiated, endorsed the check in the bank account. But if she has dominion and control over those funds, which she did here, okay, then I think she has a couple options. They almost rhetorically throw out in their brief, well, what is she to do? Wait until limitations passes? Well, that's not out of the realm of reason, actually, because the point should not be whether we return the money or where we return it to. It should be what happens to the creditors, the people that they were trying to conceal the asset from. So options? Well, one, she could have interpreted in any of the number of state court proceedings that creditors had filed against the debtor and let the court decide. At least the money's kept safe. Or she could petition for a receiver to take control of the funds. But in— But she can't just say, oh, my goodness, and return the money. I don't think you can. Once you take that step to participate in the fraud and help a debtor conceal assets, I think you then have assumed the duty and liability under 550. Mr. Greer, to your question, I was going to wait till the end, but he asked, he started with the question, if there was no bankruptcy, what would a creditor do? Could they sue? Yes, absolutely, under state fraudulent transfer law. And in fact, Judge Posner, out of the Seventh Circuit, in the Lockwood decision, has a very similar case, and we've cited to it in our briefing, where it's not bankrupt-related. They file suit under state. It's either Indiana or Illinois, a uniform fraudulent transfer law. And they file suit where a debtor transfers money to his In that case, the facts actually show that some of the money that went to the girlfriend was used to pay living expenses of the debtor, something we don't even have here. But in that case, Judge Posner still said, we think the inquiry must stop at the first stage of the analysis, that is, with the initial transferee. If it was gratuitous, the fact that some, or for that matter all, may have later seeped back to the debtor does not legitimize the transfer. And I'll just, without going too far, I want to point out, it didn't make any sense, in the absence of a desire to throw creditors off the scent, why he would give the money to her and then remove the name from the account. That is exactly what we have here, where the cashier's check was given to Ms. Whitlock in a name with Kathy DeBerry on the account as well, and then Kathy DeBerry removes her name from the account for the ostensible purpose of trying to banks are as ubiquitous as fast food chains. On every block, I walk by four on my way here, I could pull out a smartphone and with the swipe of a finger transfer money to my son or daughter, or go to my desktop and a click of the mouse and do the same thing. The story defies logic. But you're not contesting the $32,000 that was given for the education at the culinary school. That was already credited, so there was a credit. That's why we are looking at a that was already applied, but with respect to the damages that are awarded now, no other credit is. What would be the trustee's remedy, if any, if instead of involving Ms. Whitlock, Curtis had just paid $200,000 to his yacht company and $32,000 she'd spent on lottery tickets or, you know, a blowout party over the weekend or something. Would the trustee have any remedies in that circumstance? I believe the trustee would have some remedies. He would still have the remedy to go after the initial transferee, and this gets to the point of why 550D says you can't recover from both, because if you read the statute in context, right, the statute allows the trustee to go after the initial transferee or a subsequent transferee, okay? But at the end of the day, you can only have one recovery. Okay. But you've already got the $200,000 is to an LLC that's solely owned by Curtis, right? So you've already got that person in front of you that's in $232,000, in this case goes to the wife, but imagine it just gets frittered away on a lavish party or something that is not in part of the estate when the estate comes into creation under 541 on the petition date. The trustee has no remedy, and the creditors are still out of luck as to the $232,000 in my hypothetical. The trustee can still sue the — oh, was there no initial transferee in your hypothetical? Yeah. Well, I mean, the transferee is an LLC owned by Curtis. Just I'm trying to keep it as close to this case as possible, right? So you've already got that and that money is either in the estate or it's not, but it has no — it doesn't matter if there was an intermediate transfer or not. And then, two, the other $32,000 goes to the wife and she spends it on living expenses, a party, anything that's not something that's tangible, equitable, legal, or otherwise part of the estate under 541A. So the trustee would, in that case, without Ms. Whitlock being the initial transferee, the trustee would have a claim against those initial recipients of those funds? You could claim against, say, the party organizer. Sure. If she has a $32,000 party, you would have a claim that $32,000 goes to a party organizer. The party organizer could be part of the — Would go to Ms. DeBerry. The money that was initially transferred to Ms. DeBerry, she'd be the initial recipient of that transfer. To make it even simpler, say, Curtis has the party. Well — You can't go after the party organizer. If the debtor were to have transferred that money to a party organizer, there is consideration being exchanged. They provided services. That is the organizing of the party. The issue we have here is the money was transferred without any consideration whatsoever. So in your hypothetical, if there was reasonably equivalent value, there's no fraudulent transfer to begin with. What did the trustee find out that the debtor spent the money on before filing bankruptcy? The trustee to this day doesn't know — well, first of all, the debtor — and I want to be clear here because they take a lot of license in their briefing by saying the money was returned to the debtor. It was never returned to the debtor. Nothing ever went to Curtis DeBerry. It went to Kathy DeBerry and his company that I'll refer to as MBC. It was a limited liability company. It went to that company. That company was not declared an alter ego of the debtor at the time the transfer was made. That came much later. So nothing — So where'd the money that went to the company go? Is that recovered by the trustee? No. Why not? No one knows where it went. The only person who knows is Curtis DeBerry, who pled the fifth, and he's serving two years in federal prison for bankruptcy fraud. It just looks like the trustee's taking the easy way out, trying to go after Ms. Whitlock rather than trying to find out where this money went that was put in a corporation. Well, I would say this. 550 allows the trustee to go after the immediate transferee, and that is Ms. Whitlock, and using that statute — But she doesn't have it anymore. Well, Ms. Whitlock claims that she sent $200,000 on to the debtor's insider, insider for purposes of the Bankruptcy Code, wholly-owned company MBC. That was her choice. She had control of the money. What I would — Has the trustee disproved that allegation? I don't know that I have anything in record to disprove that, but what I would say is, looking at the totality of the circumstances here, Ms. Whitlock's stated reason for receiving the funds in the first place was to help provide funding for the kids' education. We know that's — And she did the worst thing possible then. She didn't even spend it on any education. She went and transferred it again as part of a shell game to another wholly-owned company, making it harder for the creditors to track it down. Has she been questioned as to how to recoup this money that went to the — Ms. Whit — Kathy DeBerry? She also was indicted and pled to bankruptcy — No, Whitlock. Ms. Whitlock? Ms. Whitlock. I believe what the record would show is Ms. Whitlock doesn't know what happened to the money after she transferred it to MBC. Now, again, I would say that that burden would be on Ms. Whitlock, as we said in our briefing, to have come forward because while it was initially summary judgment on the fact that there was a fraudulent transfer, the Bankruptcy Court then offered Ms. Whitlock a bench trial and an opportunity to put on evidence. She declined. And so at that point, it was the burden on Ms. Whitlock to put forth evidence as to whether or not she thought or could prove that the money went to benefit the trustee or the estate. Absent Ms. Whitlock showing or providing evidence that there was a double recovery, then she's waived that issue. So, coming back to the first two issues, is Ms. Whitlock an initial transferee? I think the law is clear on that. The appellant's briefing mischaracterizes this court's holding on dominion or control. It's the In Re Coutte case, I believe, that says it's dominion or control. The appellant tries to say it's dominion and control. It's been pretty clear it's dominion or control. And in either case, the trustee is shown both here. Ms. Whitlock had sole legal control over the account. She was the only one whose name was on the account after she signed off on the document removing Ms. DeBerry's name. And she had the ability to do whatever she wanted to with that money. So there's no question that she meets the dominion or control test under this court's precedent. The other question then comes back to Section 550D and whether there is a double recovery. And in this case, the record is clear. There's been no other recovery by the trustee. Again, this doesn't say or judgment or award. It says recovery. That's what the statute says. There's been no other recovery other than the credit that was already applied to cut down the 275 to 241-5 or so. Now, Mr. Cappuccio, correct me if I'm wrong, it seemed like the district court recognized there were lots of cases that went the other way on this question. So I guess it's a two-part question. First of all, is that right? And secondly, are there any cases that support your view of how to interpret 550? I think there are plenty of lower court cases that are not binding on this court that do go the other way. I would distinguish those as we've done in our briefing, whereas the majority of those cases show that some money did go back to the debtor, to the estate, or the trustee, not to the actual original transferor, or in this case, which is what makes this unique, never going back to the transferor, going back to a solely held insider company that is subsequently declared to be a fraud in and of itself. NBC was declared an alter ego by the bankruptcy court because it was determined to be a fraud and a sham. So that makes it very unique. The other cases would be windfall. Let me ask you that. Does the district court's opinion in this case turn on that fact, that the company is a fraud, a sham? Turn meaning dispositive in and of itself? Yes. Is that important to the appellant? I think it is important. I think it does distinguish this factually from all of the other cases that Mr. Greer, the appellant, has cited here. I don't see any other case that involves a transfer back to a fraudulent entity, to a company that was declared to be a sham like NBC was in the context of the bankruptcy. That is unique. The other case I would say that does support our position I mentioned earlier, and that's the Lockwood decision out of the Seventh Circuit, where they have very similar facts, the money going into an account, removing the transferor's name from the account, and in that case, more favorable to their position, they can show funds actually went back to support the debtor's personal living expenses. And still, Judge Posner says, we stopped the inquiry at the initial transferee. Can we go back to the sham LLC for a minute? I don't see how that doesn't hurt your case in the sense that the more of a sham the LLC appears, the more it looks like the money was just given straight back to Curtis, which makes it look more like giving it, I mean, just to make it a super sham, imagine that Cherie had written the check to Curtis, $200,000. Then it looks a lot more like all of the heavy list of authorities that the other side has given, where pre-petition return of the money doesn't trigger 550. I would say two things in response to that. One, the transfer happened before it was declared a LLC, number one. Number two, the bankruptcy court's judgment that was entered declaring it to be an alter ego and sham specifically says, and they did not quote this in their briefing, but they left out the provision in that judgment that says this determination does not affect any other claims or causes of action by the Chapter 7 trustee. So then coming back to Section 550D and the double recovery, I think if you just read a plain review of the statute, when you have subsections A1 and A2, an initial transferee and a subsequent transferee, the subsection in D makes perfect sense, that you can't have a double recovery because the statute on its face gives the trustee the right to sue both the initial and the subsequent transferees. And so it makes sense to have that there. Reading it in context then, the trustee would make a recovery against one. The trustee can make that election, and in this case, the trustee elected to sue Ms. Whitlock as an initial transferee and a judgment was entered. There's a supersedious bond on file down at the bankruptcy court, and if this judgment is affirmed and allowed to stand, then the real victims, which are the innocent creditors who didn't ask for any of this, can have a distribution made by the trustee to be made again. So we would ask the court to affirm the judgment by the district court and the bankruptcy court. Thank you. Mr. Greer. Very briefly, it's easy to resolve 550 in this matter. It's like the that we quoted in the brief. If you are a fraudulent transferee and you want to give the money back, if there's no bankruptcy, or in the IRS case, there's been no notice of deficiency been filed, then it's okay to give the money back to the debtor. But if a bankruptcy is filed, then 550 says, if you give the money back to the debtor after the because the true owner is now the trustee. And as you pointed out, there was no bankruptcy trustee when she returned the money. There was no ability for her to know there was going to be a bankruptcy case. Given that fraudulent transfer cases can be two to four years, and before you can bring the causes of action, it seems preposterous that you require, you put on the onus of a transferee that would have to wait and figure all this out. Mr. Capucci wants to talk about the innocent creditors in the Chapter 7 case. Well, they were innocent creditors before the bankruptcy. Those same creditors, most all were the same. So when she returned the money to the debtor, she was effectively giving the money to all the creditors for them to try to collect. She returned it. Did she place it in that trust, in that corporation? She just wrote, I'm sorry, understand all these were wire transfers, and all the wire transfers were prepared by Kathy DeBerry or someone other than Cherie. And they're all, she just basically said, go to the bank, there's a wire transfer, sign it and send it out. She's talking about when she returned it. It went to a bank account owned by the corporation, LLC, I'm sorry. But, you know, we live in a community property state. So, and in a bankruptcy case, all property, all community property goes into the bankruptcy state. In a fraud situation, all assets of both the husband and wife are all subject to claims for fraud. So Kathy giving the money back to Kathy, giving the money back to Curtis, giving back to Sham Corporation, all went to the same bro, it went back to him. Citing, there was a case we decided, it was a state court case out of the West Coast, which was just bizarre. And I know, I believe it's an outlier, but it shows the problem. In that case, the debtor returned the money, and actually they returned the money, some money post-petition. And they were okay with the money being returned post-petition because they said, once the money got back pre-petition, the creditors had to get on the stick and find that money and collect it. But on the money post-petition, they said, she's still okay because he returned the money post-petition. However, one creditor, who could have had a judgment lien on pre-part of the bankruptcy's case, said, I'm hurt because now I'm going to have to share pro-rata with all the rest of the bankruptcy creditors. And the court allowed judgment against her for waiting for the bankruptcy to be filed. It's a conundrum that just baffles the court case because it should simply be saying, give the money back to the debtor. Thank you. Thank you. Case is under submission, and we will...